UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

GERALD GAINES,

                                                    Plaintiff,

          vs.

DALE A. ARTUS, Superintendent,                        9:04-CV-76
Clinton Correctional Facility;                        (S.J. McAvoy)
T. LaVALLEY, Captain;
LT. ARMITAGE,

                                                    Defendants.

_____

APPEARANCES                             OF COUNSEL

GERALD GAINES
Plaintiff pro se

ELIOT SPITZER                           CHRISTOPHER W. HALL
New York State Attorney General          Asst. Attorney General
Attorney for Defendants

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the

Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28

U.S.C.  § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In this civil rights complaint, plaintiff alleges that he was denied due process

during a disciplinary hearing held against him.  Plaintiff also alleges that he was

denied proper medical care.  Plaintiff seeks monetary relief.

Presently before the court is defendants' motion for summary judgment

pursuant to FED. R. CIV. P. 56. (Dkt. No. 25)  Although on July 19, 2005, plaintiff requested an extension of time to respond to defendants' motion, he has never done so.  For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint.

## DISCUSSION

### 1.    <u>Summary Judgment</u>

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact.  FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted).  "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id.*  However, when the moving  party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id. See also Burt Rigid Box v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002)(citations omitted).  However, only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. *Salahuddin v. Coughlin*, 674 F. Supp. 1048, 1052 (S.D.N.Y. 1987)(citation omitted).

2.    **Facts**

Plaintiff alleges that he was denied due process at a disciplinary hearing that was held against him on September 26, 2003.  Plaintiff states that he was ordered confined for thirty days in the Special Housing Unit (SHU) and deprived of privileges. Plaintiff alleges that even though the disciplinary hearing was later reversed on appeal, he was not released from SHU until he had served his entire thirty day sentence.  Plaintiff states that he wrote several letters to defendant LaValley, stating that plaintiff was being improperly confined.

Plaintiff also states, without any supporting facts, that he was denied medical care and was subjected to "retaliation" from medical and non-medical staff.  He claims that non-medical staff officers interfered with plaintiff's treatment.  He may also be attempting to claim that he was not allowed access to his medical records, was subjected to threats, keeplock, and fear of reprisals regarding his care.

Plaintiff has attached the disciplinary records to his complaint.  He has also attached copies of the grievances that he filed against the hearing officer, together with the denial of the grievances and the related appeals.

A review of the documents attached to the complaint together with defendants' motion for summary judgment shows that on September 22, 2003, plaintiff was charged in a misbehavior report by Corrections Officer J. Wood with disobeying a direct order.  Officer Wood went to plaintiff's cell to inform him that he was going on an "outside" medical trip.  Plaintiff responded that he was not going, and Officer Wood warned plaintiff that he was disobeying a direct order, to which plaintiff replied

that he still was not going.  Plaintiff also refused to sign a form indicating that he had refused medical attention.  As a result, Officer Wood issued the misbehavior report. (Attached to Complaint).  The misbehavior report was served on plaintiff on September 23, 2003.

The disciplinary hearing was held against plaintiff on September 26, 2003. Defendant Armitage was the hearing officer.  Defendant Armitage has submitted an affidavit, together with additional documents relating to the disciplinary hearing. Armitage Decl., Ex. B.  Plaintiff was found guilty after a Tier II hearing, and sentenced to thirty days of keeplock, together with a loss of various privileges for the same amount of time. *Id.* Ex. B at 3.  The documents indicate that plaintiff did not request witnesses. *Id.* at 2.

On September 26, 2003, the same day as the hearing, plaintiff wrote a letter to defendant Artus, complaining about the disciplinary hearing. Artus Decl. Ex. C.  On September 28, 2003, plaintiff also submitted a formal appeal from the disciplinary determination. Attachment to Complaint at 3-4.[1]  On appeal, and in his letter to defendant Artus, plaintiff claimed that defendant Armitage denied plaintiff "assistance" in preparing a defense; denied plaintiff the right to call witnesses, to testify and confront his accuser; and denied the right to participate in the hearing. Plaintiff claimed that he was "rejected" from the hearing for no reason and that

---

[1] Plaintiff's attachment does not contain numbered pages.

defendant Armitage was not impartial.[2]  Plaintiff also claimed that he was denied

"disposition" sheets and a statement of the evidence relied upon in finding him guilty.

*Id.* at 4-5.

Defendant Artus referred the plaintiff's September 26, 2003 letter to defendant

LaValley for investigation. Artus Decl. ¶ 7.  Defendant LaValley wrote a

memorandum, dated October 7, 2003, in response to the part of  plaintiff's September

26, 2003 letter, alleging that plaintiff had been harassed by the staff.[3] *Id.* at 6,

Armitage Decl. Ex. E.  Captain LaValley stated that the matter had been investigated

and no evidence of staff misconduct was found. *Id.*  He also noted that plaintiff's

disciplinary hearing had been reversed for technical error and that the disposition

would be expunged from plaintiff's records.

Plaintiff's Tier II hearing was reversed because the hearing tape was blank.

Plaintiff has included a memorandum from defendant LaValley, dated October 10,

2003, informing plaintiff of the reversal.  This memorandum did not contain the

reason for the reversal, however, the first page of plaintiff's appeal contains a

handwritten note indicating that the appeal was answered on October 7, 2003 for the

---

[2] Actually, plaintiff claimed that he was denied a "partial" hearing officer, but clearly he meant that his hearing officer was not "impartial."

[3] It appears that part of the investigation conducted by defendant LaValley included requesting information from defendant Armitage regarding what occurred at the hearing.  On October 3, 2003, defendant Armitage wrote a memorandum to Captain LaValley, outlining the facts of the disciplinary determination in plaintiff's case.  Plaintiff testified at the hearing that he refused to go on the medical trip because the officer would not tell plaintiff the location of the appointment.  Defendant Armitage stated that he did not degrade, threaten, or scream at the plaintiff during the hearing and that plaintiff was argumentative during the hearing and refused to sign for the disposition. Armitage Decl. Ex. D.

"technical error" that the tape was blank. Attachment to Complaint at 3.

On October 8, 2003,[4] plaintiff filed a grievance against defendant Armitage, Officer Wood, and the medical department. Armitage Decl. Ex. C.  Plaintiff complained about the disciplinary hearing, harassment, and interference with his medical care.  Plaintiff attaches to his complaint another grievance that he wrote, dated October 17, 2003. Attachment to Complaint at 7-8.  This grievance complains that he was not released from confinement after the reversal of his disciplinary hearing.  *Id.*  In this grievance, plaintiff also complained about having a dirty cell.

Defendant Artus states that after an investigation of plaintiff's October 8, 2003 grievance, it was determined that there was no staff misconduct in relation to the disciplinary hearing. Artus Decl. ¶ 9.  Defendant Artus's Exhibit F is a copy of the response to plaintiff's October 8 grievance (filed October 9).  The response is dated October 22, 2003. *Id.*  Defendant Artus also states that he was unaware that plaintiff was kept in confinement past the date of the hearing reversal. Artus Decl. ¶ 10. Defendant Artus states that although plaintiff alleges that he wrote letters to Artus regarding the improper confinement, there were no such letters in the records maintained in defendant Artus's office. *Id.*

Defendant LaValley states that he received a letter, dated October 17, 2003 from plaintiff, complaining that he had not been released after the reversal of the

---

[4] It is unclear whether the grievance is dated October 5, 2003 or October 8, 2003.  The grievance form appears to have October 8 as the filing date, while plaintiff's written complaint has October 5 at the top of the document.  Defendant Artus states in his declaration that his office received the grievance on October 9, 2003. Artus Decl. ¶ 9.  The difference in the dates of filing is not relevant to the decision in this case.

disciplinary hearing. LaValley Decl. ¶¶ 11-12 & Ex. G.  The letter written by plaintiff has been attached as Exhibit G to defendant LaValley's Declaration.  The letter is date-stamped by defendant LaValley's office on October 20, 2003.  Defendant LaValley states that he had not heard from plaintiff between the time that LaValley sent the reversal memorandum and the time that he received the letter. LaValley Decl. ¶ 11.

Defendant LaValley states that as soon as he determined that plaintiff had not been released from confinement, defendant LaValley made a telephone call and directed that plaintiff be released. *Id.* ¶ 12.  Plaintiff was released from keeplock on October 20, 2003, the same day that defendant LaValley received the letter. *Id.* Exhibit H to the LaValley declaration is a copy of a letter plaintiff wrote to his counselor on October 19, 2003, complaining about the confinement.  It reached defendant LaValley on October 21, 2003, and there is a note in the margin of the letter, written by defendant LaValley, stating that plaintiff was released on October 20, 2003. *Id.* ¶ 12 & Ex. H.

3.   **Due Process**

In order to begin a due process analysis, the court must determine, *inter alia*, that plaintiff had a protected liberty interest in remaining free from the confinement that he challenges. *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996).  In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court held that although states may still create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an

unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  The Court in *Sandin* determined that the inmate's discipline in segregated confinement for 30 days did ***not*** present the type of atypical, significant deprivation in which the state might create a liberty interest. *Id*.

In this case, plaintiff seems to be claiming two sets of due process violations.  In the complaint itself, plaintiff alleges vaguely[5] that the hearing officer, defendant Armitage, denied plaintiff due process during the hearing.  Plaintiff also claims that the thirteen extra days that he spent in confinement after the reversal of his disciplinary hearing denied him due process.

Plaintiff's hearing was a Tier II disciplinary hearing, and the most he could have spent in confinement was 30 days according to defendant Armitage's sentence.  Based on *Sandin* and the fact that plaintiff alleges no additional deprivations (other than the deprivation of certain privileges that was part of the disciplinary sentence), there is nothing to show that the plaintiff was subjected to an "atypical" ***and*** "significant" deprivation.  Plaintiff was deposed by defense counsel in this action.  During his

_____

[5] The disciplinary appeal documents that have been attached to the complaint specify a little more clearly what plaintiff deprivations plaintiff alleged in the administrative appeal of his hearing. The court also notes that plaintiff was deposed in this case, and excerpts from the deposition have been filed by defendants in conjunction with this summary judgment motion.  During the deposition, plaintiff did state what he alleged to be the due process violations at the hearing. Deposition Transcript at 31, 34, 42, 51, 55.  Defense counsel referred to plaintiff's administrative appeal and read the claims that were contained in the appeal.  Plaintiff agreed that those claims were the same alleged violations that he was raising in this action. *Id.* at 34.  Defense counsel and plaintiff discussed the claims at length. *Id.* at 31-55.

deposition plaintiff was asked to describe the "deprivations" that he alleged he was subjected to during his disciplinary confinement. Deposition Transcript (T) at 80-86. Basically, the greatest deprivations for plaintiff were the loss of privileges such as commissary and contact with the outside world because of telephone restrictions. *Id.* However, for the short period of time to which he was subjected to these deprivations, this court cannot find that they were atypical and significant.  Thus, plaintiff had no liberty interest in remaining free from the confinement that he challenges, and he cannot make a claim for due process violations.

The same is true for the extra thirteen days that he spent in confinement after the reversal of the hearing.  Thirteen days confinement, without more, is not an atypical and significant deprivation, sufficient to create a liberty interest. Additionally, it is clear that defendant Armitage had nothing to do with those extra thirteen days, and defendant Artus states that he was unaware of the improper confinement.  Finally, it is clear that when defendant LaValley was informed that plaintiff had not been released, he called ***and had plaintiff released from confinement the same day that he received the letter.***  Thus, plaintiff's due process claims may be dismissed.

## 4.    <u>Medical Care</u>

Plaintiff also includes a claim in his complaint wherein he alleges that he was denied medical care and wherein he states that medical and non-medical personnel interfered with his medical care.  Plaintiff sprinkles the word "retaliation" in this paragraph, but it is unclear to what alleged retaliation he refers.

In order to state a claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A plaintiff must allege that his access to physicians for necessary medical care was unreasonably delayed or denied, or that prescribed medical treatment was not administered. *Tamarin v. Ward*, 534 F. Supp. 1224, 1240 (S.D.N.Y. 1982) (citing *Tatar v. Ward*, 431 F. Supp. 1129, 1133 (S.D.N.Y.)), *aff'd*, 565 F.2d 48 (2d Cir. 1977).

The court would point out that disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Ross v. Kelly*, 784 F. Supp. 35, 44 (S.D.N.Y. 1992). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted). An inmate does not have the right to treatment of his choice. *Id.* (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)); *Jackson v. Fair*, 846 F.2d 811, 817-18 (1st Cir. 1988). Additionally, negligence by physicians, even amounting to malpractice does not become a constitutional violation because the plaintiff is an inmate. *Estelle*, 429 U.S. at 107. *See also Daniels v. Williams*, 474 U.S. 327, 332 (1986)(negligence not actionable under section 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under section 1983.

In the paragraph of plaintiff's complaint alleging improper medical care, plaintiff does not name any defendant or defendants that were allegedly responsible for the conclusory claims he makes. He merely states that "medical" and "non-

10

medical" personnel were responsible. Plaintiff does not specify what he means by "interference" with his medical care. He makes another conclusory statement about access to medical documents and threats and "reprisals", but once again, there is no indication who plaintiff believes might be responsible for these actions.

During plaintiff's deposition, he went through a litany of things that bothered him about the quality of his medical care, but could never be specific regarding the individuals allegedly responsible for this sub-standard care. (T. at 87-106). Plaintiff stated that he "may have" spoken to defendant Artus about some medical problems, and that he did not remember speaking with defendant LaValley. *Id.* at 105. Plaintiff did not remember whether he spoke to defendant Armitage about his medical care. Plaintiff never really stated that any of the defendants were responsible for the alleged deficiencies.

Defendants, none of whom are "medical" personnel, have each stated in their Declarations that they had nothing to do with plaintiff's medical care. LaValley Decl. ¶ 13; Artus Decl. ¶ 12; Armitage Decl. ¶ 12. In addition to the requirements cited above for stating a constitutional medical care claim, a defendant must have been personally involved in the alleged violation in order to be liable for damages. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.), *cert. denied*, 434 U.S. 1087 (1978). The doctrine of respondeat superior is inapplicable to section 1983 claims. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973).

Based on the fact that plaintiff makes only conclusory claims and that none of

11

the named defendants were involved in plaintiff's medical care, this court must recommend dismissal of plaintiff's medical care claim.

   **WHEREFORE**, based on the findings above, it is

   **RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 25 be **GRANTED** and the complaint **DISMISSED IN ITS ENTIRETY**.

   Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: February 23, 2006

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge